## CIRCUIT COURT OF THE CITY OF NORFOLK

Sherri L. Flayhart

v.

Interocean Ugland
Management Corp. et al.

June 10, 1998

Case No. (Law) 97-2753

BY JUDGE JOHN C. MORRISON, JR.

The parties appeared on February 26, 1998, on defendants' demurrers to plaintiff's motion for judgment. For the reasons set forth in this letter opinion, the court sustains all defendants' demurrers and grants plaintiff leave to amend Court I (tortious interference with contractual relations). Counts II through V shall be dismissed with prejudice without leave to amend.

This action arises out of events which allegedly occurred while plaintiff, Sherri L. Flayhart, worked in the Norfolk office of defendant, Interocean Ugland Management Corporation ("Interocean") from July 24, 1997, to August 5, 1997. Plaintiff had been employed through Snelling Personnel, a temporary employment agency, to work at Interocean in a clerical capacity. Defendant B. J. Courtney was plaintiff's immediate supervisor; defendant William Roy was also plaintiff's superior.

Plaintiff makes allegations of inappropriate conduct on the part of defendants Courtney and Roy which occurred during the nine days she worked at Interocean. Specifically, plaintiff alleges that even though Roy knew she was married, on her second day at work, he asked her for a date. On the same day, Courtney allegedly told plaintiff that she looked like a nun dressed in professional clothing and made a request of her to dress accordingly the next day. On her sixth day at work, Roy allegedly slapped plaintiff on the buttocks with a file folder. Finally, on the ninth and last day at work, plaintiff walked into Courtney and Roy's office to deliver a facsimile

where she found Roy "entirely naked except for a hard hat laid over his genitals." Roy allegedly made no attempt to cover himself up but grinned at plaintiff. Courtney also laughed at plaintiff. After reporting this incident to Snelling Personnel, plaintiff was instructed to leave Interocean immediately.

The grounds on which plaintiff rests her case are: (1) tortious interference with contractual relations; (2) intentional infliction of emotional distress; (3) assault; (4) wrongful discharge in violation of Virginia public policy; and (5) tortious interference with contractual relations in violation of Virginia public policy.

It is well-established that a demurrer admits the truth of all properly pleaded material facts. Properly pleaded material facts, which are admitted, include facts expressly alleged, impliedly alleged, and fairly and justly inferred. *See CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993). A demurrer challenges the legal sufficiency of a pleading and tests whether, based on facts alleged and any reasonable inferences therefrom, the plaintiff has stated a cause of action upon which the court may grant relief. *See* Va. Code Ann. § 8.01-273; *Burns v. Board of Supervisors*, 218 Va. 625, 627 (1977).

A demurrer does not, however, admit the legal conclusions as stated in the motion for judgment. *See Chick v. MacBain*, 157 Va. 60, 65 (1931). If a motion for judgment contains sufficient allegations of material facts to inform a defendant of the claim asserted, the court must overrule the demurrer. *See CaterCorp.*, 246 Va. at 24. A demurrer, unlike a motion for summary judgment, does not allow the court to evaluate the merits of a claim; it only tests the sufficiency of factual allegations to determine whether the motion for judgment states a cause of action. *See Fun v. Virginia Military Inst.*, 245 Va. 249, 252 (1992).

### Count I: Tortious Interference with Contractual Relations

Plaintiff alleges that defendants "tortiously interfered with her contract to provide services for Snelling [Personnel], when, by their actions, [d]efendants Roy and Courtney made it impossible for [her] to continue her employment with Interocean." Plaintiff, however, fails to make factual allegations to support a cause of action based on tortious interference with contractual relations. On this basis, all three defendants submit that their demurrers should be sustained.

In order to establish a prima facie claim for tortious interference with contractual relations, plaintiff must allege sufficient facts to show that:

(1) she had a contract expectancy;

(2) defendants knew of the expectancy;

(3) defendants intentionally interfered with the expectancy;

(4) defendants used improper means or methods to interfere with the expectancy; and

(5) she suffered a loss as a result of defendants' disruption of the contract expectancy.

*Maximus, Inc. v. Lockheed Info. Mgt. Sys. Co.*, 254 Va. 408, 414 (1997). " 'Tortious interference' means only that the interference was intentional and improper under the circumstances, not that the 'improper methods' used were inherently illegal or tortious." *Id.* Without sufficient facts to support a prima facie claim, the court must sustain defendants' demurrers to Count I.

### *Count II: Intentional Infliction of Emotional Distress*

The Supreme Court of Virginia first recognized a cause of action for intentional infliction of emotional distress without physical injury in *Womack v. Eldridge*, 215 Va. 338 (1974). For the action to lie, four elements must be shown:

(1) the alleged conduct was *intentional or reckless*;

(2) the alleged conduct was *outrageous and intolerable* in that it offends against the generally-accepted standards of decency and morality;

(3) there was a causal connection between the alleged conduct and the emotional distress; and

(4) the emotional distress was *severe*.

*See id.* at 342 (emphasis added). A plaintiff is required to prove her case by clear and convincing evidence in order to recover. *See id.*

The "intentional or reckless" element "is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or should have known that emotional distress would likely result." *Id.* at 342. As to the "outrageous and intolerable" behavior, the Supreme Court has opined:

[I]t is insufficient for a defendant to have acted with an intent which is tortious or even criminal. Even if a defendant has intended to inflict emotional distress, or his conduct can be characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort, the requirement of [outrageousness] has not

been satisfied. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Russo v. White*, 241 Va. 23, 27 (1991) (internal quotations and citations omitted).

Trial courts are charged with the responsibility "to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." *Womack*, 215 Va. at 342 (quoting Restatement (Second) of Torts § 46 at 77). Generally speaking, the tort of intentional infliction of emotional distress is one which is "not favored" in the law. *See Ruth v. Fletcher*, 237 Va. 366, 373 (1989). On demurrer, the court is not bound by plaintiff's conclusory allegations of a motion for judgment claiming intentional infliction of emotional distress. *See Russo*, 241 Va. at 28. These claims must therefore be scrutinized very closely.

The court sustains the demurrers without deciding that the defendants' conduct rose to the level of outrageousness required to support plaintiff's cause of action. Based on the facts, any alleged effect on the plaintiff is not the type of extreme emotional distress that is so severe that no reasonable person could be expected to endure it. *See id.* at 28. The motion for judgment lacks sufficient facts to support a finding that defendants "intended to inflict emotional distress" to plaintiff. Count II shall be dismissed with prejudice.

## Count III: Assault

Plaintiff alleges that defendants Roy and Courtney assaulted her "when by conspiring to have Defendant Roy appear nude in front of her in a room full of men, they placed her in fear of her safety."

In order to establish a prima facie case of assault, there must be (1) an overt act by the defendants creating a reasonable apprehension in plaintiff of immediate, harmful, or offensive contact to plaintiff's person; (2) intent on the part of the defendants to bring about in the plaintiff apprehension of immediate, harmful, or offensive contact with the plaintiff's person; and (3) causation. *See, e.g., Merritt v. Commonwealth*, 164 Va. 653 (1935). Words or gestures alone, however, will not sustain a cause of action for assault. *See Harper v. Commonwealth*, 196 Va. 723 (1995).

The "act" to which plaintiff refers in charging assault against defendants is that which occurred on her ninth day of work, when she walked into the office and found defendant Roy "entirely naked except for a hard hat laid over his genitals." Assuming this qualifies as an "overt act," neither the alleged facts nor any inferences therefrom support a finding that defendants' conduct created a reasonable apprehension in plaintiff of immediate, harmful, or offensive contact to plaintiff's person. The court therefore sustains defendants' demurrers and dismisses Count III with prejudice.

### Count IV: Wrongful Discharge and Other Adverse Action in Violation of Public Policy

In paragraph 17 of her Motion for Judgment, plaintiff alleges that defendants violated Virginia public policies as expressed in the Virginia Human Rights Act, Va. Code § 2.1-715, *et seq.*, and the Criminal Code's section on "indecent exposure," Va. Code § 18.2-387.

The Virginia Supreme Court recently decided in *Doss v. Jamco*, 254 Va. 362 (1997), that the Virginia Human Rights Act prohibits common law causes of action based upon the public policies reflected in the Act. The court specifically referred to Virginia Code § 2.1-715(d), which states in pertinent part:

> Causes of action based upon the public policies reflected in this chapter shall be exclusively limited to those actions, procedures and remedies, if any, afforded by applicable federal or state civil rights statutes or local ordinances.

The *Doss* case renders plaintiff's wrongful discharge claim moot insofar as she relies on the Virginia Human Rights Act.

The criminal statute on which plaintiff rests her wrongful discharge claim is Virginia Code § 18.2-387, which reads in pertinent part:

> Every person who intentionally makes an obscene display or exposure of his person, or the private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, shall be guilty of a Class 1 misdemeanor.

Virginia has yet to recognize a cause of action for wrongful discharge based on "indecent exposure" laws, and this court should not create a new cause of

action in plaintiff's favor. More importantly, the facts do not support a finding that defendant Roy indecently exposed himself to plaintiff. Plaintiff alleges that defendant Roy had a "hard hat laid over his genitals." Roy neither exposed his "private parts" nor made an obscene display of his person as required under § 18.2-387. *See, e.g., Hart v. Commonwealth*, 18 Va. App. 77 (1994). Defendants' demurrers are therefore sustained.

### *Count V: Tortious Interference with Contractual Relations in Violation of Virginia Public Policy*

This claim is a hybrid of Counts I and IV. By itself, "tortious interference with contractual relations in violation of Virginia public policy" is not a recognized cause of action in Virginia. Thus, the court sustains defendants' demurrers and dismisses with prejudice Count IV of plaintiff's Motion for Judgment.

As stated above, the court grants plaintiff leave to amend her motion for judgment with respect to Count I.