# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

YUKON POCAHONTAS COAL COMPANY, A CORPORATION, ET
ALS. V. F. M. RATLIFF, ET ALS.

April 8, 1940.

Record No. 2212.

Present, All the Justices.

The opinion states the case.

*Greever & Gillespie, Burns & Lively, F. H. Combs* and *Landon C. Bell,* for the appellants.

*Roland E. Chase, W. A. Daugherty* and *S. H. & Geo. C. Sutherland,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

Five corporations, the appellants, the Yukon Pocahontas Coal Company, the W. M. Ritter Lumber Company, the

Buchanan Coal Company, the Sayers Pocahontas Coal Company, Inc., and the Red Jacket Coal Corporation, filed their bill in the Circuit Court of Buchanan county against F. M. Ratliff and ninety other defendants, seeking a declaratory judgment in a controversy involving the interpretation of a deed, and praying for an injunction to prevent an alleged unlawful interference with the exercise of the rights and privileges granted to the appellants in the said deed.

Two demurrers to the bill were filed, one by each of two separate groups of the defendants. The demurrers assigned twenty-four specific grounds as to the insufficiency of the bill. The trial court sustained the demurrers on the ground that the language of the deed was free from ambiguity and clearly and definitely fixed the rights of the parties. It denied the appellants, for that reason, the right to a declaratory judgment and dismissed the bill. The trial judge, nevertheless, in a written memorandum, in giving his reasons for the conclusion that the deed was free from ambiguity, did undertake to construe the language.

The decree of dismissal further held that the acts charged against the defendants constituted no infringement upon the rights of the appellants.

██ In view of the pleadings and upon the record, there is presented to us, at this time, for consideration, the sole question of whether or not the facts alleged in the bill are sufficient to sustain this action. We are here concerned with the *right* to the interpretation, rather than the *interpretation* of the deed. The test of the *right* to an interpretation is the existence of an "actual controversy". The *interpretation* is the solution of the controversy. It follows as the result of the controversy. Whether or not there is a controversy is a question of fact, and may be shown by the pleadings or by the evidence.

█ The effect of the demurrers was to admit as true all facts well pleaded in the bill. If the admitted facts disclosed an "actual controversy" or an "actual antagonistic assertion or denial of right," then the appellants were en-

titled to have the court make a binding adjudication of right. Virginia Code 1936, sections 6140a-6140h.

■ The so-called "declaratory judgment act," it is to be remembered, is remedial and is to be liberally interpreted and administered.

The bill, drawn by learned and experienced counsel, is comprehensive in its allegations and averments. In length, it occupies twenty-eight printed pages of the record. Boiled down to the allegations material to the point in issue here, it shows the following averment of facts:

That the appellants, engaged in the mining, manufacturing, production and sale of coal, are the owners and lessees of certain coal lands and the coal and minerals therein, and of certain rights, privileges and easements in connection with the ownership and developments of such coal properties, the mining, manufacturing, production, and sale and disposal of coal and its products; that for the purpose of said development they have acquired many acres of coal properties and are expending large sums of money in the opening up and equipping of mines, in the erection of stores, offices, shops and other necessary buildings, improvements and devices, and in providing homes for their employees and facilities for carrying on their business;

That included in the said lands is a tract of 320.6 acres, part of a tract of land known as the "James M. Ratliff 702 Acre Tract," described in a deed dated September 23, 1904, from James M. Ratliff and his wife; that all of the estates, property and rights conveyed by said deed are now owned by appellants, while the property, estates and rights not passing under said deed are owned by the defendants, who are the heirs and grantees of the heirs of James M. Ratliff;

That the deed, by good and sufficient title, with special covenants and general warranty, conveyed the following property, rights, privileges and interest in the land described in said deed:

"All coal, oil, gas, found in, on and under the following described tract or parcel of land, and all timber from six-

teen inches in diameter and under on Thirty Five acres of said land, lying on Mill Ridge, which may be standing on said land at the beginning of mining operation, together with the rights of way for excavating and mining said land, and sufficient surface for making drift mouths, air-shafts, wells and sufficient land on which to erect tipples, tanks, pipe lines, washers, pumping stations, roads, and sidings, tram roads, incline roads, chutes, and such other devices as is necessary for the successful mining and manufacturing and removing said coal, oil, gas on or underlying said tract of land herein described, or any adjacent tracts that the said party of the second part or assigns may own or lease; and the said parties of the first part, further grant unto the said Buchanan Coal & Coke Company, its successors or assigns, the right to take the entire body or bodies of coal, oil and timber herein conveyed off, through, under and over said lands without leaving any support for overlying strata, and without liability for any injury which may result from breaking of said strata, and the right of mining and removing said coal herein conveyed, and of ventilating and draining the mines by such openings, ways and structures as shall be necessary for the safe, convenient, and economical mining of said coal, and oils, and the further right of *my* mining and transporting the coal of and from other lands through and by means of the openings, ways and structures, upon and in the said lands as well as over same; also the right to take and use so much water from said land as said mining purposes may require."

That the deed also contained the following reservations:

"The parties of the first part reserve one half an acre around the grave yard and also the rights to use coal for domestic purposes and also reserves the overland privileges over the bottom land along Levisa River and two acres around the dwelling."

That the mining rights, privileges and easements conveyed in the deed vested in the appellants not only those expressly granted, but also any and all other mining reasonably necessary for the mining and manufacture of the coal

and minerals acquired, including the right to construct and maintain stores, warehouses, supply houses, miners' homes, hospitals, gardens and pastures for themselves and their employees, and rights of way for ingress and egress upon and below the surface of said land;

That the defendants are dividing the surface of a portion of land described in said deed into town lots, streets and alleys, selling and conveying the lots, erecting and permitting the erection of buildings and other improvements thereon; that these acts are inconsistent with any use thereof for mining purposes, and are destroying the easements, rights and privileges of the appellants, and, in effect, are excluding them from any use of the surface of the land, in violation of the rights, privileges and easements expressly and impliedly conveyed to them by the deed;

That the rights and privileges of the appellants extend to every portion of the Ratliff land, and that the reservations in the deed are either void or should be definitely fixed and determined;

That it is necessary for the appellants, in the development of their properties, to have the immediate use of the surface of the said land for contemplated extensions and improvements of the nature mentioned in the immediate future, and that the invasion of the premises by the defendants hinders and prevents the appellants from exercising, possessing and using the rights, privileges and easements granted expressly and impliedly;

That appellants have no plain, adequate and complete relief at law, and unless the defendants are enjoined and restrained in acts of trespass contrary to the rights of the appellants, the latter will be caused irreparable injury and damage.

The bill prays that the substantive nature and character of the mining rights, privileges and easements conveyed by the deed be adjudicated and defined; that the effect and extent of the reservations therein be likewise defined; that the cloud upon the title and rights of the appellants be removed; that an injunction be granted restraining the de-

fendants from interfering with the rights, privileges and easements of the appellants; and for certain other specific relief, as well as such other and further relief as may be necessary.

The allegations of the bill show that there is an "actual controversy" and an "actual antagonistic assertion or denial of right" between the parties, since it alleges that the controversy involves not only a denial of the implied rights, easements and privileges claimed by the appellants, but a denial of the rights expressly granted *eo nomine* in the deed.

Accepting the allegations of fact in the bill as true, as we must do on demurrer, we are of opinion that they are sufficient to sustain the bill of the appellants for an adjudication of the rights in controversy. Likewise, if the allegations are true, there is no complete and adequate remedy at law. Under such circumstances, the appellants are entitled to whatever equitable relief may appear to be necessary and requisite after a hearing upon the merits.

Many pages, in fact most of the pages, of the briefs are taken up in argument on a proper construction of the language of the deed. That is the main issue in the case, and will be developed when the case is heard upon its merits. It is obvious that this court cannot now, upon the present pleadings, pass upon the merits.

For its error in sustaining the demurrers, the decree of the trial court is reversed, and the case is remanded for such further proceedings therein as may be necessary and proper.

*Reversed and remanded.*