# CIRCUIT COURT OF ORANGE COUNTY

Clifton I. Barnes
and Courtney A. Barnes

    v.

Orange County
Board of Supervisors

           Case No. CL08-000290

James A. Strong
and diane D. Strong

    v.

Orange County
Board of Supervisors

           Case No. CL08-000293

James Hunter Higginbotham, II,
and Kent Coolidge Higginbotham

    v.

Orange County
Board of Supervisors

           Case No. CL08-000291

Norman B. Higginbotham
and Kent Coolidge Higginbotham

    v.

Orange County
Board of Supervisors

Case No. CL08-000292

June 22, 2009

BY JUDGE DANIEL R. BOUTON

I am writing to advise you of the court's ruling on the issue of whether any of the named plaintiffs have standing to proceed with an action for declaratory judgment under § 8.01-184 of the Code of Virginia. The issue has been raised in each of the above referenced cases by demurrers that have been filed by Orange County. The court sets forth below its ruling, along with a detailed discussion of its rationale. Moreover, as a result of the ruling, the court will address the way in which the cases will proceed at this point. Finally, since the court has limited its formal ruling to the standing question, the court will comment on how it will handle the other issues that have been raised by the demurrer and the pleas in bar.

### Discussion of the Standing Issue

The principles of law that apply to actions for declaratory judgment have been thoroughly discussed by the Supreme Court of Virginia in many decided cases. In order for the court to exercise its discretion to invoke the remedy of declaratory judgment, an "actual controversy" must exist between the parties to the litigation. The action must include "specific adverse claims" that are "ripe for judicial adjustment." The plaintiff must be an "aggrieved party" with a "justiciable controversy" against another party. *Mosher Steel-Virginia v. Teig*, 229 Va. 95 (1985); *Blue Cross v. Saint Mary's Hosp.*, 245 Va. 24 (1993). The statute "does not give trial courts the authority to render advisory opinions, to decide moot questions, or to answer inquiries that are merely speculative." *Hoffman Family, L.L.C. v. Mill Two Associates*, 259 Va. 685, 692 (2000).

In addition to taking into account that the plaintiffs seek relief in the form of declaratory judgment, it must also be noted that the cases are before the court based on demurrers. Therefore, in order to determine whether any of the plaintiffs have standing, the court must render its decision based solely on an evaluation of the facts that are set forth in each of the complaints. The court must not speculate on what might now be occurring between the parties, and it may not consider facts and circumstances that could have developed since the actions were filed. Furthermore, the court must not give any consideration to any of the possible scenarios that were suggested at oral argument. Finally, while a demurrer assumes the truth of the facts contained in a complaint, it does not admit the correctness of the pleader's conclusions of law. *Fox v. Custis*, 236 Va. 71 (1988); *Dodge v. Randolph-Macon Woman's College*, 276 Va. 1 (2008).

Turning to the pleadings, the court will now address whether any of the complaints set forth facts that are sufficient to satisfy the standing requirement. In all of the cases, the plaintiffs maintain that they are "aggrieved" for one principal reason. Specifically, they assert that the subdivision ordinance "alters what may be done" with their land. In their memorandum, the plaintiffs argue further that the ordinance "severely curtails the manner in which the plaintiffs can divide and convey their property." They also claim that "whether and how they subdivide their property, as well as the marketability of the newly created parcels, will change markedly. . . ."

In the court's view, however, the allegations are not sufficient to establish a justiciable controversy as that term has been defined and developed by the Supreme Court of Virginia. In particular, to establish standing, the plaintiff must be able to articulate a reason or reasons why she or he is aggrieved; this means that the plaintiff must identify a direct, substantial, and immediate interest that she or he has in the case. The interest must in some way be specific to the individual plaintiff, and it must be more than a general complaint about the action taken by the government. Moreover, the interest must have ripened into an actual dispute at the time that the action is filed. A mere disagreement with the government, coupled with the possibility of future difficulties, is not sufficient to invoke the remedy of declaratory judgment. The county emphasizes these principles in its argument to the court, and strong support for this position can be found in the case of *City of Fairfax v. Shanklin*, 205 Va. 227 (1964). There, in reversing the trial judge's determination that an actual controversy had been pleaded, the Supreme Court of Virginia said:

> Since there was no specific case regarding apartment usage within the city involved in this cause, plaintiff's case had to depend, of necessity, upon future or speculative facts, that is to say, that a special use permit might, someday, be granted by the board which might aggrieve the plaintiff. Under these circumstances, the motion for declaratory judgment, upon its face, merely sought an advisory opinion, or a decision upon a moot question, or an answer to a speculative inquiry.

*Id.*, at 231.

In the present case, it can be argued that some of the facts cited by the plaintiffs render their position on standing much stronger than that of the plaintiff in *Shanklin*. The plaintiffs here point to a number of specific ways in which the subdivision ordinance will restrict the use and limit the marketability of their property. Nevertheless, the facts as pleaded still do not reach the level of an actual controversy because they only describe possibilities and general problems. While there may be some merit to the concerns expressed by the plaintiffs regarding how the subdivision ordinance might affect them, the ordinance promulgated by Orange County here is no different from other land use actions that are typically and frequently taken by governing bodies. Every such action and decision affects property owners in some of the ways that are claimed by the plaintiffs. Whenever a governing body or agency passes an ordinance, makes a zoning decision, or grants or denies a request of any type, the position of the property owner is always changed. As noted by the *Shanklin* court, more than this is needed to justify an action for declaratory judgment.

Furthermore, the other cases relied on by the plaintiffs are not sufficient for the court to overrule the demurrers. For example, in their memorandum, the plaintiffs cite the case of *Cupp v. Fairfax County*, 227 Va. 580 (1984), to support their claim that a justiciable controversy exists between them and Orange County. However, the facts that were relied on by the plaintiff in *Cupp* to establish standing are completely different from those cited by the plaintiffs in these cases. In *Cupp*, the property owners were engaged in a hotly contested dispute with the local governing body over the terms and conditions of a special exception permit. The owners needed the permit to operate their plant/nursery business on the disputed property. In contrast to the plaintiffs in the present case, the owners in *Cupp* actually applied for the permit. In addition, the county was attempting to attach a number of land dedication and road requirements to the permit; the plaintiffs vigorously opposed these conditions. Eventually, after a lengthy and contentious set of negotiations with

the county, the application for the special exception permit was denied. Only then was relief sought by means of an action for declaratory judgment. Thus, in *Cupp*, the adverse parties were at odds over specific actions when the suit was filed. Here, similar antagonistic actions have yet to occur between the plaintiffs and Orange County. The plaintiffs merely complain of the various ways in which their property might be adversely affected; however, none of them have a dispute with the county that has evolved into a justiciable controversy.

At oral argument, the plaintiffs also cited the case of *Fairfax County v. Southland Corp.*, 224 Va. 514 (1982), in support of their assertion that an actionable claim between them and the county has been sufficiently pleaded. In *Southland*, the plaintiff was a corporate entity whose sole business was the construction and operation of convenience stores. When the action was filed, the plaintiff had not yet applied for the special use permit that was needed to conduct this business. Yet, the Supreme Court of Virginia still found that the company had standing to bring an action for declaratory judgment. The plaintiffs here maintain that they are in a position similar to that of the plaintiff in *Southland*. They assert that *Southland* stands for the proposition that a litigant can have standing even if no specific permit has been applied for and even if no specific action has been requested of the governing body.

The court finds, however, that *Southland* can be distinguished from the present case for two important reasons. First, the plaintiff in *Southland* was contesting a provision in the zoning ordinance that required it to obtain a special use permit before it could construct and operate a convenience store. It was alleged that this process would cost several thousand dollars in application fees, attorney's fees, engineering fees, and associated costs. The plaintiff also stated that, because of the need for a special use permit, it would be injured in conducting its business. As noted previously, the operation of convenience stores was specific to the plaintiff and it was the only type of business activity engaged in by the corporation. Furthermore, the pleadings alleged that property owners who were similarly situated did not need to obtain a permit in order to conduct business. The plaintiff thus claimed that the company was being subjected to a form of unfair business discrimination. Therefore, in contrast to the plaintiffs who are before the court, the plaintiff in *Southland* described an adverse impact that was specific to the only business conducted by it. The impact resulted directly from the application of the ordinance. Moreover, the impact was not based on future events or hypothetical facts. Rather, at the time the suit was filed, the plaintiff intended to use its property for the construction of a convenience store. This intent was known to the county, which disputed the plaintiff's right to proceed as planned.

The second material difference between *Southland* and the cases before the court is that the pleadings in *Southland* stated that the corporation had "attempted and may be attempting to construct and operate quick-service food stores in Fairfax County" without the special exception permit. In other words, specific adverse actions had been taken in the past and were perhaps being undertaken at the time that the suit was commenced. These facts demonstrated the "actual antagonistic assertion and denial of right" required by the Virginia Supreme Court in cases of declaratory judgment. *Williams v. Bank of Norfolk*, 203 Va. 657 (1962); *Yukon Pocahontas Coal Co. v. Ratliff*, 175 Va. 366 (1940).

As a result of the above discussion, the court finds that *Southland* presents facts and circumstances in support of standing that are absent from the present cases. Moreover, in this context, it should also be noted that the Supreme Court of Virginia has decided other cases that are analogous to *Southland*. These cases provide further support for the court's ruling regarding the insufficiency of the pleadings in these cases.

For example, in *River Heights Associates v. Batten*, 267 Va. 262 (2004), a property owner attempted to develop four lots in a subdivision; the project was the subject of a dispute between him and the subdivision homeowner's association. The developer gave notice of his intent and informed the association of his plans; he invested his time and money in the project; and he proceeded to take specific actions that were antagonistic to the rights being asserted by the association. Under these facts, he was permitted to seek relief in the form of declaratory judgment. Similarly, in *Hoffman Family, L.L.C. v. Mill Two Associates, supra*, the developer had also taken substantial steps to proceed with a real estate project in a manner that was in conflict with the position being taken by the property owners association. Once again, the owner was found to have standing to bring an action for declaratory judgment. In both *Batten* and *Mill Two Associates*, the Supreme Court of Virginia stressed that the facts regarding what had actually occurred between the developer and the association demonstrated the existence of an actual controversy. In both cases, what had already transpired between the litigants extended beyond a possible or hypothetical dispute.

The recent case of *Bell v. Saunders*, 278 Va. 49 (2009), is also consistent with the court's conclusion that the pleadings here do not set forth a justiciable controversy. There, the Supreme Court of Virginia again explained that the remedy of declaratory judgment can only be invoked when an actual controversy between the litigants has been established. The case involved the distribution of funds from a testamentary trust that was set up to benefit the son, Edward J. Bell, Jr., of a decedent, Edward J. Bell, Sr. The decedent's attorney, N. Leslie Saunders, Jr., had qualified as trustee and was actively

administering the trust. The son passed away and his surviving wife, Linda Bell, was engaged in a dispute with the trustee over whether she was entitled to income from the trust funds because of her position as the wife of the decedent's son. The surviving wife sought declaratory judgment against the trustee over the distribution of the trust income. In addition to Linda Bell's claim regarding trust income, her child, David Bell, was also a plaintiff in the action. David Bell asserted that, when his father died, Saunders was required to make a distribution to him because he was a beneficiary of his father's estate. David Bell, therefore, sought declaratory judgment against Saunders and an order that Saunders be required as the executor of the father's estate to distribute Bell's share to him. Based on these facts, the trial court ruled that no actual controversy existed between the defendant and either of the plaintiffs. The demurrer was sustained and the entire complaint was dismissed.

On appeal, the Supreme Court of Virginia reversed the decision regarding the surviving wife but affirmed the trial judge's ruling concerning the son. What is critical in this context is that, in analyzing whether the pleadings set forth a justiciable controversy, the Supreme Court found a clear distinction between the cause pleaded by the surviving wife and the action of the son. The surviving wife pleaded that she was entitled to certain income from the trust, that the trustee refused to pay it, and that the trustee was not going to disburse any funds until the surviving wife's death. On these facts, the Supreme Court concluded "Linda Bell has pleaded a justiciable controversy which includes specific adverse claims based on present facts that are ripe for adjudication pursuant to Va. Code § 8.01-184." (*Bell v. Saunders*, 278 Va. at 55.) On the other hand, with respect to the son's claim, the court applied a different rationale. Specifically, the court noted that N. Leslie Saunders, Jr., had not yet qualified as the executor of the estate of Edward J. Bell, Sr. Therefore, he had no authority to distribute any funds to the son. Thus, even though a clash between the two of them was likely to develop, the son was not yet in a position to seek relief through declaratory judgment. Consistent with the court's reasoning here, the Supreme Court said: "David Bell failed to plead the existence of an actual controversy involving an antagonistic assertion and denial of right between himself and Saunders." (*Bell v. Saunders*, 278 Va. at 56.)

In light of the above analysis, the court concludes that the pleadings in the above referenced cases do not set forth an actual controversy that would justify an action for declaratory judgment. While the position of the plaintiffs is arguably more adverse to the county than that of the plaintiff in *Shanklin*, the pleadings still fail to allege facts that reflect any specific controversy at the present time. Therefore, the demurrers will be sustained on the issue of standing.

*Leave To Amend*

This issue was briefly discussed at the May 22nd hearing. No further argument is necessary on this point. Rule 1:8 states that leave to amend "shall be liberally granted in furtherance of the ends of justice." Whether an amendment should be granted rests within the discretion of the court. However, if no amendment has been previously allowed and if an amendment would not prejudice the defendant, it can be an abuse of discretion to deny a motion for leave to amend. *Mortarino v. Consultant Engineering Services*, 251 Va. 289 (1996).

Here the court concludes that the plaintiffs should have the opportunity to file an amended complaint, if any of them be so advised. Based on the cases discussed here and in light of some of the points raised at oral argument, this ruling would serve the ends of justice. Therefore, each plaintiff will be granted leave to file an amended complaint within twenty-one days of the entry of the order that sustains the demurrer. The defendant shall then have twenty-one days from the date any such amended complaint is served to file any responsive pleadings deemed appropriate.

*The Remainder of the Demurrer and the Pleas in Bar*

Having ruled on the question of standing, the court respectfully declines to resolve the other issues raised by the demurrer. Also, the court will not address the pleas in bar. The court is aware that counsel argued these matters extensively both at the hearing that was conducted on May 22nd and in the memoranda that have been filed with the court. Both sides would like to ascertain the court's views and be informed on how the court would rule. Depending on how the cases proceed at this stage of the litigation, it might be more efficient and it could save time if the court were to set forth what might be characterized as anticipatory rulings. Nevertheless, after giving careful consideration to this approach, the court finds that it would not be appropriate to expand its analysis beyond the standing question. To do so would be to engage in speculation and conjecture regarding any amended complaint that might be filed. The choice to proceed with an amended complaint and the claims contained in any such complaint are matters that rest solely in the hands of the plaintiffs. Moreover, standing must be established under the rationale of the cases cited here before any other ruling is announced.

Nevertheless, it should be noted that, if any amended complaint is found to allege a justiciable controversy and if the court is again confronted with issues that have already been argued and briefed, the court will accommodate counsel and the litigants by not requiring any additional, unnecessary work. Matters that have already been addressed can be ruled on and disposed of promptly by the court. All parties will be given a full opportunity to be heard, but the court will make every effort to avoid repetition and duplication.